IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., | : | |
| | : | |
| **Plaintiff/Counterclaim Defendant,** | : | **CASE NO. 1:26-CV-00024-SJD** |
| | : | |
| v. | : | **JUDGE SUSAN J. DLOTT** |
| | : | |
| HILLCREST SOLAR I, LLC, | : | **MAGISTRATE JUDGE KAREN L.** |
| | : | **LITKOVITZ** |
| **Defendant/Counterclaim Plaintiff/** | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| ISAAC MERCER, | : | |
| | : | |
| **Third-Party Defendant.** | : | |
| | : | |

**STIPULATED PROTECTIVE ORDER AND ESI PROTOCOL**

Pursuant to the parties' joint request that the Court enter this Order, the parties' agreement governing electronically stored information ("ESI"), and their agreement that the following limitations and restrictions should apply to documents and information produced for inspection and copying during the course of this litigation (the "Action"), the Court hereby **ORDERS** that:

1.      **Scope.** This Protective Order (hereinafter "Protective Order") shall apply to all documents or other information produced in the course of discovery in this Action that the producing person or entity (the "Producing Party") has designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" pursuant to this Protective Order, including but not limited to, all initial disclosures, all responses to discovery requests, all deposition testimony and exhibits, and all materials (including documents or testimony) produced by non-parties in response

1

to subpoenas issued in connection with this matter, including all copies, excerpts, and summaries thereof (collectively the "Confidential Information").

2. **Purpose.** The purpose of this Protective Order is to protect against the unnecessary disclosure of Confidential Information and to incorporate the parties' agreement set forth in Attachment B hereto governing the protection and exchange of documents and ESI.

3. **Disclosure Defined.** As used herein, "disclosure" or "to disclose" means to divulge, reveal, describe, summarize, paraphrase, quote, transmit, or otherwise communicate Confidential Information, and the restrictions contained herein regarding disclosure of Confidential Information also apply with equal force to any copies, excerpts, analyses, or summaries of such materials or the information contained therein, as well as to any pleadings, briefs, exhibits, transcripts or other documents which may be prepared in connection with this litigation which contain or refer to the Confidential Information or information contained therein.

4. **Designating Material As Confidential.** Any party, or any third party subpoenaed by one of the parties, may designate as "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" any documents, testimony, written responses, or other materials produced in this case if they contain information that the Producing Party asserts in good faith is protected from disclosure by statute or common law, including, but not limited to, confidential personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available. Information that is publicly available may not be designated as confidential. The designation of materials as confidential pursuant to the terms of this Protective Order does not mean that the document or other material has any status or protection by statute or otherwise except to the extent and for the purposes of this Protective Order.

2

5. **Form and Timing Of Designation.**

a. **Documents And Written Materials.** The Producing Party shall designate any document or other written materials as confidential pursuant to this Protective Order by marking each page of the material with a stamp identifying it as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER," if practical to do so. The person or entity designating the material shall place the stamp, to the extent possible, in such a manner that it will not interfere with the legibility of the document. Materials shall be so-designated prior to, or at the time of, their production or disclosure.

b. **ESI.** If a production response includes confidential ESI, the Producing Party shall make an effort to include within the electronic files themselves the designation "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER" to the extent practicable. If that is not practicable, then the Producing Party shall designate in a transmittal letter or email to the party to whom the materials are produced (the "Receiving Party") using a reasonable identifier (*e.g.*, the Bates range) any portions of the ESI that should be treated as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER."

c. **Deposition Testimony.** Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within sixty (60) days after receipt of the deposition transcript. Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected, except that any exhibit that has previously been marked as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER" at the time of production, and which still bears that mark at the time of its use in a deposition, shall be presumed to be confidential under this Protective Order without further designation.

6. **Limitation Of Use.**

a. **General Protections.** All information designated "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER," including all information derived therefrom, shall be used by the Receiving Party solely for purposes of prosecuting or defending this Action. The Receiving Party shall not use or disclose the Confidential Information for any other purpose, including but not limited to any business, commercial, or competitive purpose. Except as set forth in this Protective Order, the Receiving Party shall not disclose Confidential Information to any third party. This Protective Order shall not prevent the Producing Party from using or disclosing information it has designated as Confidential Information, and that belongs to the Producing Party, for any purpose that the Producing Party deems appropriate, except that the Producing Party's voluntary disclosure of Confidential Information outside the scope of this Action may impact the protection that this Protective Order would otherwise provide with regard to such information, once disclosed.

b. **Persons To Whom Confidential Information May Be Disclosed.** Use of any information, documents, or portions of documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," including all information derived therefrom, shall be restricted solely to the following persons who agree to be bound by the terms of this Protective Order, unless additional persons are stipulated by counsel or authorized by the Court:

    1.   Outside counsel of record for the parties, and the administrative staff of outside counsel's firms;

    2.   In-house counsel for the parties, and the administrative staff for each in-house counsel;

4

3. Any party to this action who is an individual;

4. As to any party to this action who is not an individual, every employee, director, officer, or manager of that party, but only to the extent necessary to further the interest of the parties in this litigation;

5. Independent consultants or expert witnesses (including partners, associates and employees of the firm that employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, but only to the extent necessary to further the interest of the parties in this litigation, and only after such persons have completed the certification attached hereto as Attachment A, Acknowledgment of Understanding and Agreement to be Bound;

6. The Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this Action;

7. The authors and the original recipients of the documents;

8. Any court reporter or videographer reporting a deposition;

9. Employees of copy services, microfilming or database services, trial support firms, and/or translators who are engaged by the parties during the litigation of this Action;

10. Potential witnesses, deponents, hearing or trial witnesses, and any other person, where counsel for a party to this Action in good faith determines the individual should be provided access to such information in order for counsel to more effectively prosecute or defend this Action (as long as the disclosure occurs in the presence of counsel, and copies, duplicates, images, or the like are not removed or retained by any interviewee, potential witness, deponent, or hearing or trial witness), and only after such persons have completed the certification attached hereto as Attachment A, Acknowledgment of Understanding and Agreement to be Bound; or

11. Any other person agreed to in writing by the parties.

Prior to being shown any documents produced by another party marked "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER," any person listed under paragraph 6(b)(3), 6(b)(4), 6(b)(10) or 6(b)(11) shall be advised that the confidential information is being disclosed pursuant to and subject to the terms of this Protective Order.

7.    **Inadvertent Production.** Inadvertent production of any document or information with the designation of "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER" shall be governed by Fed. R. Evid. 502. Pursuant to subsections (d) and (e) of that Rule, the parties agree to, and the Court orders, protection of Protected Information against claims of waiver (including as against third parties and in other Federal and State proceedings) in the event such information is produced during the course of the Litigation, whether pursuant to a Court order, a parties' discovery request, or informal production, as follows:

a.    The production of documents or electronically stored information ("ESI") (including, without limitation, metadata) subject to a legally recognized claim of privilege or other protection from production or other disclosure (collectively, "Protected Information"), including without limitation the attorney-client privilege and work-product doctrine, shall in no way constitute the voluntary disclosure of such Protected Information;

b.    The production of Protected Information shall not result in the waiver of any privilege or protection associated with such Protected Information as to the receiving party, or any third parties, and shall not result in any waiver of protection, including subject matter waiver, of any kind;

c.    If any document or ESI (including, without limitation, metadata) received by a party is on its face clearly subject to a legally recognizable privilege, immunity, or other right not to produce such information, the Receiving Party will promptly notify the Producing Party in writing that it has discovered Protected Information, identify the Protected Information by Bates Number range, and return or sequester such Protected Information until the Producing Party confirms whether it does indeed assert any privilege protecting this information. Once the Producing Party asserts privilege over such Protected Information (as described in Subparagraph

6

(e) below), the Receiving Party will return, sequester, or destroy all copies of such Protected Information, along with any notes, abstracts or compilations of the content thereof, within ten (10) business days of notice from the Producing Party;

d. Upon the request of the Producing Party, the Receiving Party will promptly disclose the names of any individuals who have read or have had access to the Protected Information;

e. If the Producing Party intends to assert a claim of privilege or other protection over Protected Information identified by the receiving party, the Producing Party will, within ten (10) business days of receiving the Receiving Party's written notification, inform the Receiving Party of such intention in writing and shall provide the Receiving Party with a log for such Protected Information that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege, immunity or basis for non-disclosure, and in the event, if any portion of the Protected Information does not contain privileged or protected information, the Producing Party shall also provide to the Receiving Party a redacted copy of the Protected Information that omits the information that the Producing Party believes is subject to a claim of privilege, immunity or other protection;

f. If, during the course of the litigation, a party determines it has produced Protected Information, the Producing Party may notify the Receiving Party of such production in writing. The Producing Party's written notice must identify the Protected Information by Bates Number range, the privilege or protection claimed, and the basis for the assertion of the privilege and shall provide the receiving party with a log for such Protected Information that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege, immunity or basis for non-disclosure, and in the event any portion of the Protected Information does not contain privileged or protected information, the Producing Party shall also

7

provide to the receiving party a redacted copy of the Protected Information that omits the information that the Producing Party believes is subject to a claim of privilege, immunity or other protection. The Producing Party must also demand the return of the Protected Information. After receiving such written notification, the Receiving Party must, within ten (10) business days of receiving the written notification, return, sequester, or destroy the specified Protected Information and any copies, along with any notes, abstracts or compilations of the content thereof;

g.     A Receiving Party's return, sequestration, or destruction of such Protected Information as provided in the Subparagraphs above will not act as a waiver of the Receiving Party's right to move for the production of the returned, sequestered, or destroyed Protected Information on grounds that the Protected Information is not in fact subject to a viable claim of privilege or other protection. However, the Receiving Party is prohibited and estopped from arguing that the Producing Party's production of the Protected Information in this matter acts as a waiver of applicable privileges or protections, that the disclosure of the Protected Information by the Producing Party was not inadvertent, that the Producing Party did not take reasonable steps to prevent the disclosure of the Protected Information, or that the Producing Party did not take reasonable steps to rectify such disclosure;

h.     Nothing contained herein is intended to or shall limit a Producing Party's right to conduct a review of documents or ESI (including, without limitation, metadata), for relevance, responsiveness, and/or the segregation of privileged and/or protected information before such information is produced to the Receiving Party; and

i.     Prior to production to another party, all copies, electronic images, duplicates, extracts, summaries, or descriptions (collectively "copies") of documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order, or in any

8

individual portion of such a document, shall be affixed with the designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" if it does not already appear on the copy. All such copies shall thereafter be entitled to the protection of this Order. The term "copies" shall not include indices, electronic databases, or lists of documents provided these indices, electronic databases, or lists do not contain substantial portions or images of the text of confidential documents or otherwise disclose the substance of the confidential information contained in those documents.

8.    **Filing Materials Containing Information Designated Confidential.** In the event a party seeks to file with the Court any Confidential Information subject to protection under this Protective Order, that party must take appropriate action to ensure that the document receives proper protection from public disclosure, including: (a) filing a redacted document with the consent of the party who designated the document as confidential; (b) where appropriate (*e.g.*, in relation to discovery and evidentiary motions), submitting the document solely for *in camera* review; or (c) seeking permission of the Court to file the document under seal by filing a motion for leave to file under seal.

Any motion to file a document subject to this Protective Order under seal must meet the Sixth Circuit's standard set forth in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016). The burden of demonstrating the need for and appropriateness of a sealing order is borne by the moving party, and requires the moving party to analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations. Regardless of whether the parties agree, it remains the Court's independent obligation to determine whether a seal is appropriate for any given document or portion thereof. Any proposed sealing, even when compelling reasons exist, must be narrowly tailored to serve the compelling reasons.

9

When a party to this Protective Order seeks to file documents which it believes may warrant sealing, but is not the party who may be prejudiced by the document or documents becoming part of the public record, the filing party shall provide the potentially-prejudiced party or parties, or any potentially-prejudiced third party or parties, with written notification of its intent to file such documents at least (14) **fourteen days** before doing so. After being provided such notice, the potentially harmed party or parties will then have (7) **seven days** to file with the Court a motion for sealing. The Court will rule on the motion as promptly as possible.

9. **Attorneys Allowed To Provide Advice.** Nothing in this Protective Order shall bar or otherwise restrict any attorney for any party from rendering advice to his or her client with respect to this case or from doing anything necessary to prosecute or defend this case and furthering the interests of his or her client, except for the disclosure of the Confidential Information as proscribed in this Protective Order.

10. **Excluding Others From Access.** Whenever information designated as "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" is to be discussed at a deposition, the person or entity that designated the information as "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" may exclude from the room any person, other than persons designated in Paragraph 6 of this Protective Order, as appropriate, for that portion of the deposition.

11. **No Voluntary Disclosure To Other Entities.** The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in this litigation as set forth in Paragraph 6 of this Protective Order or as otherwise commanded by law or provided in this Protective Order. Nothing in this Protective Order shall prevent a party from providing information in its possession in response to a valid order or subpoena from a law enforcement or regulatory

agency requiring the production of such information, except that, prior to such production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as confidential to facilitate that party's efforts to preserve the confidentiality of the material, if warranted.

12. **Disputes As To Designations.** Each party has the right to dispute the confidential status claimed by any other party or subpoenaed person or entity in accordance with this Protective Order. If a party believes that any documents or materials have been inappropriately designated by another party or subpoenaed party, that party shall confer with counsel for the person or entity that designated the documents or materials. As part of that conferral, the designating person or entity must assess whether redaction is a viable alternative to complete non-disclosure. If any party challenges the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation of any document or information, the burden to properly maintain the designation shall, at all times, remain with the person or entity that made the designation to show that said document or information should remain protected pursuant to Federal Civil Rule 26(c). In the event of disagreement, then the designating person or entity shall file a motion pursuant to Federal Civil Rule 26(c). A party who disagrees with the designation must nevertheless abide by that designation until the matter is resolved by agreement of the parties or by order of the Court.

13. **Information Security Protections.** Any person in possession of Confidential Information received from another person or entity in connection with this Action shall maintain an information security program that includes reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such Confidential Information, protect against any reasonably anticipated threats or hazards to the security of such Confidential Information, and protect against unauthorized access to or use of such Confidential Information.

11

If the Receiving Party discovers a breach of security, including any actual or suspected unauthorized access, to Confidential Information subject to this Protective Order, they shall: (1) notify the person or entity who designated the materials as confidential of such breach; (2) investigate and take reasonable efforts to remediate the effects of the breach; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident. In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

14.    **All Trials Open To Public.** All trials, and certain pretrial proceedings and hearings, are open to the public (collectively a "Public Hearing" or "Public Hearings"). Absent further order of the Court, there will be no restrictions on any Party's ability to the use during a Public Hearing any document or information that has been designated as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER," or documents or information derived therefrom that would disclose such confidential information. However, if a party intends to present at a Public Hearing any document or information that has been so designated, the party intending to present such document or information  shall provide advance notice to the person or entity that designated the material as Confidential at least (5) **five** days before the Public Hearing by identifying the documents or information at issue as specifically as possible (*i.e.*, by Bates Number, page range, deposition transcript line, etc.) without divulging the actual documents or information. Any person may then seek appropriate relief from the Court regarding restrictions on the use of such documents or information at trial, or sealing of the courtroom, if appropriate.

15.    **No Waiver Of Right To Object.** This Protective Order does not limit the right of any party to object to the scope of discovery in the above-captioned action.

**16.     No Determination Of Admissibility.** This Protective Order does not constitute a determination of the admissibility of any documents or items of information produced in discovery in this Action, nor of whether or not there is a proper evidentiary foundation for any documents or items of information produced. Nothing in this Protective Order shall cause or operate as a waiver of any party's objections to the admissibility of any document or item of information offered as evidence at any trial or hearing in this Action.

**17.     No Admissions.** Designation by either party of information or documents as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER," or failure to so designate, will not constitute an admission that information or documents are or are not confidential or trade secrets. Neither party may introduce into evidence in any proceeding between the parties, other than a motion to determine whether the Protective Order covers the information or documents in dispute, the fact that the other party designated or failed to designate information or documents as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER."

**18.     No Prior Judicial Determination.** This Protective Order is based on the representations and agreements of the parties and is entered for the purpose of facilitating discovery in this action. Nothing in this Protective Order shall be construed or presented as a judicial determination that any documents or information designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" by counsel or the parties is in fact subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

**19.     Order Subject To Modification.** This Protective Order shall be subject to modification by the Court on its own motion or on motion of a party or any other person with standing concerning the subject matter.

13

20. **Parties May Consent To Disclosure.** Nothing shall prevent disclosure beyond the terms of this Protective Order if all parties consent to such disclosure, or if the Court, after notice to all affected parties, permits such disclosure. Specifically, if and to the extent any party wishes to disclose any Confidential Information beyond the terms of this Protective Order, that party shall provide all other parties with reasonable notice in writing of its request to so disclose the materials. If the parties cannot resolve their disagreement with respect to the disclosure of any Confidential Information, then a party may petition the Court for a determination of these issues. In addition, any interested member of the public may also challenge the designation of any material as confidential, pursuant to the terms of this paragraph.

21. **Return Of Materials Upon Termination Of Litigation.** Upon the written request and expense of the Producing Party, within sixty (60) days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, the parties and any person authorized by this Protective Order to receive confidential information shall return to the Producing Party, or destroy, all information and documents subject to this Protective Order, unless the specific document or information has been offered into evidence or filed without restriction as to disclosure. The party requesting the return of materials shall pay the reasonable costs of responding to its request. The party returning or destroying the documents or other information shall certify that it has not maintained any copies of confidential information, except as permitted by this Protective Order.

22. **Counsel Allowed To Retain Copy Of Filings.** Nothing in this Protective Order shall prevent outside counsel for a party from maintaining in its files a copy of any filings in the Action, including any such filings that incorporate or attach information designated as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER." Moreover, an attorney may use his

14

or her work product in subsequent litigation provided that such use does not disclose any information or documents designated in this matter as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

**SO ORDERED.**

Dated: *May 13, 2026*

U.S. DISTRICT JUDGE SUSAN J. DLOTT

AGREED TO:

/s/ David P. Strup
David P. Strup (0034665)
Jeff M. Smith (0096018)
Shumaker, Loop & Kendrick, LLP
1000 Jackson Street
Toledo, OH 43604
Telephone: (419) 241-9000
Fax: (419) 241-6894
dstrup@shumaker.com
jmsmith@shumaker.com

*Counsel for Plaintiff/Counterclaim Defendant PCL Construction Services, Inc. and Third-Party Defendant Isaac Mercer*

/s/ Heather M. Hawkins
Heather M. Hawkins (0078569)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
301 E. 4th Street, Suite 2800
Cincinnati, OH 45202-2838
Telephone: (513) 381-2838
Fax: (513) 381-0205
hhawkins@taftlaw.com
jcolon@taftlaw.com

/s/ Peter W. Hahn
Peter W. Hahn (0070202)
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215-6106
Telephone: (614) 221-2838
Fax: (614) 221-2007
phahn@taftlaw.com

*Counsel for Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Hillcrest Solar I, LLC*

15

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., | : | |
| | : | |
| **Plaintiff/Counterclaim Defendant,** | : | **CASE NO. 1:26-CV-00024-SJD** |
| | : | |
| v. | : | **JUDGE SUSAN J. DLOTT** |
| | : | |
| HILLCREST SOLAR I, LLC, | : | **MAGISTRATE JUDGE KAREN L.** |
| | : | **LITKOVITZ** |
| **Defendant/Counterclaim Plaintiff/** | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| ISAAC MERCER, | : | |
| | : | |
| **Third-Party Defendant.** | : | |
| | : | |

**ATTACHMENT A**

The undersigned hereby acknowledges that [he/she] has read the Protective Order dated [INSERT DATE OF OPERATIVE PROTECTIVE ORDER] (the "Protective Order") in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Southern District of Ohio in matters relating to the Protective Order and understands that the terms of the Protective Order obligate [him/her] to use documents designated "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER" in accordance with the Protective Order, solely for the purpose of the above-captioned action, and not to disclose any such documents or information derived directly therefrom to any other person, firm, or concern.

1

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

_____

_____

Date: _____

_____

Signature

## ATTACHMENT B

### AGREEMENT GOVERNING THE PROTECTION AND EXCHANGE OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

The parties, by and through their respective undersigned counsel, hereby agree to this protocol for the discovery of Electronically Stored Information (*"ESI"*) in the matter of *PCL Construction Services, Inc. v. Hillcrest Solar I, LLC, et al.* pending in the United States District Court, Southern District of Ohio, Western Division (the *"Lawsuit"*). PCL Construction Services, Inc., Hillcrest Solar I, LLC, and Isaac Mercer are defined as the *"Parties,"* or individually, as a *"Party."*

### I.    DEFINITIONS AND SCOPE.

The following protocol and definitions shall control the production of ESI in the Lawsuit.

**A.**    *"Document(s)"* means ESI existing in any medium from which information can be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing the same.

**B.**    *"Native File(s)"* or *"Native Format"* means ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified.

**C.**    *"Metadata"* means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

1

**D.** *"Load File"* means an electronic data file containing information identifying documents containing an indication of which individual pages or files constitute each Document and relevant data relevant to each individual Document, including extracted metadata.

**E.** *"OCR"* means optical character recognition, generating a text from an image of text using software.

**F.** *"Extracted Text"* means all text content extracted from a Native File.

**G.** *"Receiving Party"* shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the Rule 26(a) disclosures.

**H.** *"Producing Party"* shall mean the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the Rule 26(a) disclosures.

**I.** *"Bates Number"* means an identifier consisting of a short two to eight letter prefix, associated with the Producing Party's name, followed by 6 or more numbers (*e.g.,* ABCD000001). The prefix should include only letters, dashes, or underscores. The prefix and number should not be separated by a space. Each Document in the production is assigned a unique, incremental Bates Number. The prefix must be the same for all Documents produced from the same Producing Party.

## II. GENERAL PROVISIONS.

**A.** The agreements set forth herein are without prejudice to any Party's right to request additional information about, or production of, additional ESI, or object to such requests for information or production on grounds related to the particular request. The Parties shall confer in good faith with regard to whether such additional efforts are reasonably required and, if so, who

2

should bear the cost, and may seek assistance from the Court to resolve such disputes if agreement cannot be reached.

**B.** The Parties shall make reasonable efforts to comply with, and resolve any differences concerning compliance with, this protocol. If a Party cannot comply with any aspect of this protocol, such Party shall inform the other Parties as to why compliance with the protocol is unreasonable or not possible. No Party may seek relief from the Court concerning compliance with this protocol until it has conferred with the other Parties.

**C.** Each Party has an independent and separate obligation to search for and produce paper documents. All such hard copy documents shall be converted to single page, black and white TIFF image files, produced with an OCR file and pursuant to the same protocols as outlined in Section IV.A. below or as otherwise agreed to by the Parties.

## III. IDENTIFICATION OF RESPONSIVE DOCUMENTS.

**A.** **Search for Discoverable Documents.** Documents which are neither privileged nor otherwise protected against disclosure shall be timely produced in response to a non-objectionable request for the production of such Documents, and the Producing Party shall conduct a reasonable and good faith search for responsive ESI.

**B.** **Custodians.** The Responding Party shall disclose to the Requesting Party the persons it believes in good faith to be most likely to possess responsive Documents (the "*Custodians*"). The Custodians' email and other ESI locations will be searched by the Producing Party for responsive Documents. The designation of Custodians is without prejudice to the right of a Party to identify and request additional names to include as Custodians. The parties will work in good faith to avoid duplication, redundancy, or disagreement in designating or identifying custodians.

3

**C.      Date Range.** The Parties will meet and confer to reach agreement on an appropriate date range for searching potentially responsive Documents.

**D.      Sources of Documents.** The Parties agree that the following data sources shall be preserved and searched for each of the Custodians, above:  (1) any and all email mailbox(es) containing potentially responsive ESI, (2) network-based or cloud system file shares (individual, project, and/or department/group) for the storage of electronic documents, (3) mobile devices (cell-phones and tablets) for unique or non-duplicative data, and (4) user-created content on laptop/desktop computer hard drive(s), provided that they are not duplicative of documents contained in network-based file shares.

**E.      Preservation.** The Parties will preserve and collect Documents in a forensically sound, non-altering manner that maintains metadata, integrity, and parent-child links. Each Party will issue and monitor legal holds, and preserve message content, edits/deletions, reactions, threading, and attachments where available. Metadata will be produced only as it exists.

**F.      System Files.** Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be preserved, processed, reviewed, or produced. The Parties shall meet and confer on any additional file types that also need not be preserved, processed, reviewed, or produced.

**G.      Search Terms.** If a Responding Party intends to limit the collection set by search terms, the Responding Party shall disclose to all Parties the search terms and any other culling/search criteria it intends to apply (the "***Proposed Search Terms***") to filter the sources of ESI for the Custodians. If any Party has good cause to object to the search terms used by the Responding Party, or would like additional search terms used, it shall inform the Responding Party

4

of the objection(s) or additional search terms in writing within seven (7) days of receiving the Proposed Search Terms. The Parties will then confer in good faith to reach agreement on any alternative or additional search terms. If the Parties cannot reach an agreement within seven (7) days of the Requesting Party's objections or additional requests, or within any other period of time agreed to by the parties in writing, the Requesting Party may seek relief from the Court. While the dispute is pending before the Court, the Responding Party will timely produce responsive Documents using the Proposed Search Terms and any agreed-upon additions. The Parties shall also agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery.

H. **No Responsiveness Presumption.** The fact that a Document is captured by a search pursuant to this protocol does not mean that such Document is responsive to a discovery request or otherwise relevant in the Lawsuit. Discovery requests and the Parties' responses thereto shall govern the scope of documents to be produced, subject to the Parties' objections and any agreements reached in the Parties' meet-and-confer process.

I. **Technology Assisted Review.** A party may use a technology assisted review platform to assist identification of potentially responsive Documents. The use of any technology to assist in the review of documents does not relieve a party or its counsel of the obligations to identify potentially responsive and/or relevant documents for production.

IV. **PRODUCTION FORMAT.**

Documents shall be produced according to the following formats:

A. **General Format Requirements.**

1. Except as otherwise provided herein, all Documents shall be produced in Native Format. Images as single-page TIFF images are to be at a minimum resolution of 300 DPI,

5

in black and white or color as the Producing Party deems necessary to ensure readability and preservation of important content or to maintain color as recognized by review tools (e.g., images, charts, signatures, highlights). Color images may be produced as JPG, PNG, or color TIFF provided they remain single-page and compatible with standard review platforms. Redacted or related documents will be in image format, unless required in Native Format.

2.      A Concordance DAT file with standard delimiters and an OPT cross-reference file shall accompany each production.

    a.      Field delimiters shall be UTF-8 character code ¶ (020).

    b.      Text-qualifier delimiters shall be UTF-8 character code þ (254).

    c.      The first line of each DAT file shall identify all included field names.

    d.      Subfolders shall be set in the review program to contain no more than 1,000 images per folder.

3.      The DAT file shall include fields marking the beginning and end of each document, paths to documents produced in native format, and all metadata fields listed in the agreed-upon metadata table.

4.      Document-level text files shall be provided for each document, containing either extracted text or OCR text.

    a.      Each text file shall be named with the document's Beginning Bates number.

    b.      OCR for redacted documents shall not include text from redacted portions.

    c.      Extracted text is required unless technically unobtainable.

5. Hidden content — including tracked changes, comments, notes, revisions, and other metadata viewable within the native file — shall be rendered so that such content appears on the produced image.

6. Electronic Production of Paper Documents. Documents that are maintained in paper format shall be scanned images at 300 DPI resolution, in text searchable PDF format that represents the full and complete information contained in the original Document. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately. Documents shall also be produced with the associated OCR text, and with a load file. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the image.

**B. Native File Production**

1. Audio, video, spreadsheet, presentation, database, and other similar files that cannot be reasonably reviewed in TIFF format shall be produced in native format.

2. All metadata fields applicable to the file type shall be produced with the native file.

3. A Party may request native production of any document by referencing its Bates number(s) or specifically requesting the production by category (for example, requesting "native project schedules" in a Rule 34 document request). Such requests shall not be unreasonably denied. The Parties shall meet and confer as needed to resolve any disputes.

**C. Attachment Families.**

1. The relationship of Documents in a document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents

7

where a parent-child relationship exists between the documents) shall be maintained using the Begin Family and End Family fields of the load file, provided however that the Parties shall only be required to present one level of parent-child relationship. Document images generated from native attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent email in their Bates Numbering.

      2.    For Documents that contain hyperlinks that point to other Documents in the possession, custody and control of the Producing Party, the parties shall meet and confer to determine the appropriate scope of collection and form of production for hyperlinked content.

      E.    **Duplicates.** A Producing Party who has more than one identical copy of an electronic document (*i.e.*, the documents are actual duplicates) need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. Deduplication will be based on the MD5 or SHA1 hash values of native versions of documents, respecting differences in families (*i.e.*, two duplicates attached to different emails will both be provided). The hash value will take into account the document's text and intrinsic metadata (*e.g.*, author, date created, etc.), but not extrinsic metadata values (*e.g.*, custodian, file path). Emails should be systematically and consistently deduplicated. A Producing Party shall deliver in its Load File populated All Custodians and All File Paths fields that include the identity of each Custodian whose file(s) was removed as a duplicate of a produced document and the file path location of that duplicate.

      G.    **Discovery and Admissibility.** Nothing herein shall be construed to affect the discoverability or admissibility of any Document. All objections to the discoverability or admissibility of any Document are preserved and may be asserted at any time.

8

H. **Metadata.** The Producing Party shall produce the metadata information described below with each production and in the format described above. For each Document, the Producing Party shall produce a line in the index file with the following fields, where available. The field naming conventions shall be as follows. Datetime metadata and text will be provided in UTC in a consistent, reasonable, and clearly delimited format. For example, MM/DD/YYY H:M.

| FIELD | DESCRIPTION | DATA | EXAMPLE |
|---|---|---|---|
| Begin Bates | Beginning Bates number of first page of a document | Type | ABCD000002 |
| End Bates | Ending Bates number of last page of a document | Text | ABCD000002 |
| Begin Family | Begin Bates of parent document of family of attachments | Text | ABCD000001 |
| End Family | End Bates of last attachment of family | Text | ABCD000004 |
| Pages | Number of Bates stamped pages for the image if provided | Text | 3 |
| Native Path | Relative file path of native record within production, including filename and extension of native file within the production.<br><br>Only for documents produced in native format | Number | .\vol001\natives 001\ABCD00002.xlsx |
| TextPath | Relative file path of text record within production, including filename and extension of the text file within the production. | text | .\VOL001\text\001\ ABCD000002.txt |

9

| Placeholder | If Bates stamped document is produced with a placeholder image (values: Y or N) | Text | Y |
|---|---|---|---|
| Redacted | If this document has redactions (values: Y or N) | Text | REDACTED |
| All Custodians | A list of all custodians that all copies were collected from. | Text | |
| All Paths | A list of all file paths for all copies. | Text | |
| Author | Creator of document | Text | Jones |
| Bcc | Additional blind recipients of an email (Blind Carbon Copy) | Text | bob@acme.com |
| Cc | Additional recipients of email (Carbon Copy) | Text | sue@acme.com |
| Custodian | Name of person from whom documents were first imported from | Text | Jones |
| Date Created | Datetime document was created | Datetime | 07/21/1969 02:56:00 PM |
| Date Modified | Datetime document was last modified | Datetime | 07/21/1969 02:56:00 PM |
| Date Received | Datetime document was received | Datetime | 07/21/1969 02:56:00 PM |
| Date Sent | Datetime an email was sent | Datetime | 07/21/1969 02:56:00 PM |
| File Extension | The suffix at the end of a native filename indicating file type | Text | .docx .pdf .xlsx |
| Filename | Original filename of native document, including extension | Text | interesting spread sheet.xlsx |

10

| File Path | Original source file path, including folder name | Text | sent mail/ |
| --- | --- | --- | --- |
| From | Sender | Text | jones@acme.com |
| In Reply To | Message id of email this email is in reply to | Text | |
| Message Id | Unique message id from internet headers | Text | |
| MD5 Hash | MD5 Hash value of Document | MD5 Hash | |
| Subject | Subject line | Text | Check this out! |
| To | Recipient | Text | mary@acme.com |

11